# CHARLESTON

## Coalmer v. Barrett.

### Submitted March 6, 1906.   Decided January 26, 1907.

1.  VERDICT—*When Set Aside.*

    In an action at law, a verdict of a jury which is without sufficient evidence to support it, or plainly against the decided weight and preponderance of conflicting evidence, should upon proper motion be set aside and a new trial awarded.   (p. 238.)

2.  VERDICT—*To be Set Aside—Must be Unjust.*

    To justify setting aside a verdict on the ground that it is plainly against the decided weight and preponderance of conflicting evidence, the weight and preponderance of evidence against the verdict must be decided in the sense of pronounced.   The verdict must be palpably unjust.   A doubtful case, a slight weight and preponderance of evidence against the verdict, is not a sufficient cause for setting it aside.   (p. 241.)

3.  VERDICT—*Evidence—Preponderance—Jury.*

    Notwithstanding the rule stated above, a verdict depending solely on conflicting oral evidence given by the witnesses in the presence of the jury will not be set aside on the ground alone that the verdict is plainly against the decided weight and preponderance of such evidence, because to do so would invade the province of the jury in determining the credibility of such witnesses.   (p. 242.)

4.  VERDICT—*Oral Evidence—Documentary Evidence.*

    To justify setting aside a verdict in a case involving conflicting oral evidence, on the ground alone that the verdict is plainly against the decided weight and preponderance of conflicting evidence, the court must go beyond the question of the credibility of the witnesses who gave conflicting oral evidence in the presence of the jury, and find documentary evidence, uncontroverted evidence,

facts or circumstances, or some of these, which when considered with such conflicting oral evidence plainly constitute a decided weight and preponderance of evidence against the verdict. (p. 243.)

5. VERDICT—*When Will be Set Aside.*

    Upon a motion to set aside a verdict on the ground that it is contrary to the evidence, or plainly against the decided weight and preponderance of conflicting evidence, the trial court in the first instance, and this Court upon review, under section 9, chapter 131, Code 1887, as amended and re-enacted by chapter 100, acts 1891, will consider all proper evidence, facts and circumstances in the case, whether conflicting or not. (p. 244.)

6. REVERSAL.

    This Court will not reverse the action of the trial court in setting aside a verdict and awarding a new trial, unless such action is plainly erroneous. (p. 246.)

Error to Circuit Court, Raleigh County.

Action by W. A. Coalmer against R. E. Barrett. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

CHAS. E. HOGG, for plaintiff in error.

VINSON & THOMPSON; LILLY & SHREWSBURY, for defendant in error.

COX, PRESIDENT:

This action was brought before a justice of Raleigh county by W. A. Coalmer against R. E. Barrett to recover the possession of one bay mare of the value of $125.00, one saddle of the value of $15.00, one bridle of the value of $1.00 and one saddle blanket of the value of $1.00, and $100.00 damages for the detention thereof. The judgment of the justice was for the plaintiff. Upon appeal to the circuit court, there was a trial by jury and a verdict for defendant, which upon motion of plaintiff was set aside and a new trial awarded. To this order setting aside the verdict and awarding a new trial the defendant obtained a writ of error from this Court.

This action involves the ownership of personal property. The sole ground advanced for setting aside the verdict was that it was contrary to the law and evidence. The sole complaint here is, that the lower court erred in setting aside the

verdict and in not entering judgment for the defendant. By
an agreement made a part of the record, it was admitted that
the plaintiff was the owner of the property in controversy,
up to the 28th of July, 1902. Previous to that date, about
the first of June, 1902, R. B. Waugh, a dealer in musical in-
struments, termed in the evidence "a music dealer," ob-
tained from the plaintiff, then a liveryman at Logan Court
House, the mare, saddle, bridle and blanket in controversy,
and proceeded therewith on a trip through a section of this
State. On or about the 4th day of July, 1902, in Raleigh
county, Waugh sold, or attempted to sell, and delivered the
property in controversy to the defendant at the price of
$175.00. In order for Waugh to have passed ownership of
the property, he must have been the owner of such property.
The defendant contended that Waugh became the owner of
the property, and passed ownership thereof to him. To sup-
port this contention he offered Waugh as a witness, who tes-
tified that, previous to obtaining the mare and other prop-
erty, the plaintiff priced the mare to him at $125.00; that
at the time defendant obtained her she was lame and had a
sore back, and that plaintiff then said, "Bert (meaning
Waugh), I don't known how about this whether you can
ride her or not;" that plaintiff again priced her at $125.00,
and said, "You cure up this back and take her at seventy-
five cents a day straight time, or any time you want her
send me $125.00 and the mare's yours." Witness further
said that the price of $125.00 was to include the saddle and
bridle; and that, with this understanding, he accepted the
property and proceeded upon his journey. The witness also
claimed afterwards to have accepted the alternative proposi-
tion or offer to sell at $125.00, not expressly but impliedly.
If there had been no continuing offer to sell or option, there
could have been no acceptance thereof. The minds of the par-
ties did not meet in contract upon the terms of a previous
offer or option, if in fact no such offer or option ever existed.
If there was no contract of purchase, there was no purchase
by Waugh, and his sale to defendant did not pass ownership
of the property to him.

We have carefully considered all of the evidence, and find
that it is materially conflicting as to the existence of such
offer or option. What then is our duty? By what rules are

we governed? Numerous decisions of this Court construing section 9, chapter 131, Code 1887, as amended and re-enacted by chapter 100, acts 1891, have declared that this section as it now exists wrought a change in the rule governing this Court as to the consideration of conflicting evidence upon a writ of error or *supersedeas* in an action at law. *Martin* v. *Thayer*, 37 W. Va. 38; *Johnson* v. *Burns*, 39 W. Va. 658; *Yeager* v. *Bluefield*, 40 W. Va. 484; *State* v. *Zeigler*, 40 W. Va. 593; *Akers* v. *De Witt*, 41 W. Va. 229; *Davidson* v. *Ry. Co.*, 41 W. Va. 407; *Gilmer* v. *Sydenstricker*, 42 W. Va. 52; *Liner* v. *Traders Co.*, 44 W. Va. 175; *Laidley* v. *County Court*, 44 W. Va. 566; *Dewing & Co.* v. *Coberly*, 44 W. Va. 606; *Barrett* v. *Raleigh Coal Co.*, 55 W. Va. 395; *Buck* v. *Newberry*, 55 W. Va. 681; *State* v. *Sullivan*, 55 W. Va. 597; *Fulton* v. *Crosby-Beckley Co.*, 57 W. Va. 97. Said new section 9 provides that the trial court shall certify all the evidence, and that all the evidence so certified shall be considered by the court of appeals. Upon review of the action of the trial court upon a motion to set aside a verdict, we no longer, as formerly, reject the oral evidence of the exceptor (the party moving to set aside the verdict) in conflict with the evidence of his adversary. We consider all proper evidence, and determine where the weight and preponderance is if the evidence is conflicting, and whether or not that weight and preponderance is decided within the meaning of the law. If the verdict is found to be without sufficient evidence to support it, or plainly against the decided weight and preponderance of conflicting evidence, it will be set aside. See cases before cited. Not only does this rule, announced as the true construction of said new section 9, obtain in this Court, but by implication extends to the circuit courts. *Laidley* v. *County Court*, 44 W. Va. 566. This rule dealing with the weight and preponderance of conflicting evidence must of necessity extend to a demurrer to evidence, a motion to exclude evidence and to direct a verdict after all the evidence is in, and to a case where it is sought to reverse a judgment of the court which heard the case in lieu of a jury. Upon principle, the same rule must govern in each of these situations. This Court has substantially so held. *Barrett* v. *Coal Co.*, 55 W. Va. 395; *Hysell* v. *Sterling Coal & Mfg. Co.*, 46 W. Va. 158. There is no

good reason why the case should not be taken away from a jury by the judgment of the court, upon a demurrer to evidence or upon a motion to direct a verdict, if a verdict contrary to such judgment must be set aside by the same court. It may be remarked in this connection that a motion to exclude evidence and to direct a verdict, in a case where the admissible evidence is conflicting, is not technically correct, because under said new section 9 conflicting evidence cannot be excluded, but must be considered. However, as the motion is in part to direct a verdict, it answers the purpose, notwithstanding the inaccuracy of the expression "to exclude the evidence."

In dealing with the weight and preponderance of conflicting evidence, upon a motion to set aside a verdict, under the new rule how shall we proceed? The verdict must be plainly against the decided weight and preponderance of the evidence, before it will be set aside. The weight and preponderance must be decided in the sense of pronounced. As said by JUDGE BRANNON in *Gilmer* v. *Sydenstricker*, the call to set aside "must be very loud and plain." The verdict must be palpably unjust. A doubtful case, a slight weight and preponderance of evidence against the verdict, is not a sufficient cause for setting it aside.

Notwithstanding the rule stated above, a verdict depending solely on conflicting oral evidence given by the witnesses in the presence of the jury will not be set aside on the ground alone that the verdict is plainly against the decided weight and preponderance of such evidence, because to do so would invade the province of the jury in determining the credibility of such witnesses. To pass upon the credibility of such witnesses is the unquestioned province of the jury. This principle is deducible from many, if not all, of the cases bearing upon this question, decided by this Court both before and since said section 9 was amended and re-enacted. This Court may differ from the jury as to the credibility of the witnesses who gave conflicting oral evidence in the presence of the jury, and be of the opinion that plainly the decided weight and preponderance of such conflicting oral evidence is against the verdict; but this is not the plain and decided weight and preponderance meant by our decisions, which will justify the court in setting aside the verdict. The reasons therefor have

often been repeated. The jury saw the witnesses, their demeanor, their apparent candor, prejudice or bias, and all the incidents of the trial, and was as well prepared to judge of their credibility as the trial judge, and better prepared than the members of this Court, who have not had the same opportunity for observation. To justify setting aside a verdict on the ground that it is plainly against the decided weight and preponderance of conflicting oral evidence, the court must go beyond the question of the credibility of the witnesses who gave conflicting oral evidence in the presence of the jury. In *Akers v. De Witt, supra*, the Court held that "the credibility of a witness or witnesses is a question peculiarly within the province of the jury; and when this is the sole question presented on a writ of error to the judgment of the circuit court overruling a motion to set aside the verdict of the jury for this cause alone, the Court will not disturb such judgment." In the last paragraph of the opinion by JUDGE DENT, he says: "My conclusion therefore is, that the jury have the right to judge of the credibility of the witnesses testifying before it, and the Constitution and the law forbid this Court to interfere with their finding, for which reason the judgment is affirmed." In the opinion of this Court in *Trump v. Coal & Coke Co.*, 46 W. Va. 238, it was said: "This evidence is apparently sufficient to overcome Trump's, but the jury saw the witnesses and for some reason gave the weight and credibility to Trump. This was their province, with which this Court is powerless to interfere without disregarding the constitutional guaranty of right of jury trial." In *State v. Sullivan, supra*, it was held that, "if a new trial depends upon the weight of testimony or inferences from it, the jury are exclusively and almost uncontrollably the judges." In *Fulton v. Crosby-Beckley Co., supra*, it was held that "a new trial will not be allowed in a case in which only simple issues of fact were raised depending upon conflicting oral evidence, thus making the credibility of witnesses an important factor in the case, merely because the verdict is contrary to an excess in the *quantum* of such evidence, there being direct and positive evidence tending to sustain it and no controlling, physical, admitted or established facts with which it is inconsistent." In *Young v. Ry.*

*Co.*, 44 W. Va. 218, it was held that "the jury is the sole judge of the credibility of contradicting witnesses, and of the weight to be given to their testimony." Other cases to the same effect might be cited. Various expressions have been used by this Court in relation to this matter. Some of these expressions may at first appear inconsistent, but upon close examination we think that they will be found consistent with the propositions announced in this opinion. In *Smith* v. *N. & W. Ry. Co.*, 48 W. Va. 69, it was held that "the verdict of a jury depending upon the weight of oral testimony and the credibility of witnesses will not be disturbed, unless for some reason there has been a plain miscarriage of justice." Other cases using similar expressions might be mentioned. We do not interpret those cases as controverting the proposition that a verdict depending solely upon conflicting oral evidence given in the presence of the jury will not be set aside on the ground alone that the verdict is against the weight and preponderance of such evidence. We think that they announce the doctrine that there must be some other reason or ground showing a miscarriage of justice, such as a misconception of the case or of the law of the case, or the like, justifying a disturbance of the verdict.

In view of what we have said, is there much difference between the old and the new rule in a case involving only conflicting oral evidence given in the presence of the jury? What is the difference between rejecting the oral evidence of a witness and giving credit to the oral evidence of another in conflict therewith? When the court refuses to set aside a verdict in a case involving only conflicting oral evidence given in the presence of the jury, it places the stamp of approval upon a verdict which credits certain of such oral evidence in preference to that with which it is in conflict. There seems to be but little, if any, difference in effect between the old and the new rule, in a case involving only conflicting oral evidence given by the witnesses in the presence of the jury. If the court cannot disturb a verdict involving only the question of the credibility of witnesses who gave conflicting oral evidence in the presence of the jury, when can the court set aside a verdict involving conflicting oral evidence? In a case involving conflicting oral evidence, to justify a disturbance of the verdict on the ground alone that it is plainly against the

decided weight and preponderance of the evidence, there must be documentary evidence, uncontroverted evidence, facts or circumstances, or some of these, which when considered with the conflicting oral evidence plainly constitute a decided weight and preponderance of evidence against the verdict. Without such documentary evidence, uncontroverted evidence, facts or circumstances, the court is powerless to set aside a verdict on the ground alone that it is plainly against the decided weight and preponderance of conflicting evidence; because to do so would invade the province of the jury in determining the credibility of the witnesses who gave conflicting oral evidence in the presence of the jury. In considering the case at bar, there is another rule which we must observe. The verdict was set aside by the lower court. Such action is entitled to peculiar respect. It will not be reversed unless plainly erroneous. *Miller* v. *Ins. Co.*, 12 W. Va. 116; *Black* v. *Thomas*, 21 W. Va. 709; *Reynolds* v. *Tompkins*, 23 W. Va. 229; *Probst* v. *Braeunlick*, 24 W. Va. 356.

Keeping in view these rules, was the verdict plainly against the decided weight and preponderance of the evidence, and did the court err in setting aside the verdict? The greater number of the witnesses who gave oral evidence before the jury supported the plaintiff's contention; but that alone did not justify a disturbance of the verdict. There are, however, certain potential facts, circumstances and uncontroverted evidence which in our judgment, when considered with the conflicting oral evidence, plainly constitute a decided weight and preponderance of evidence against the verdict within the meaning of the rule. Two letters, dated respectively the 28th of July and 2nd of September, 1902, both a considerable time after the attempted sale by Waugh, were sent by him to plaintiff by mail. These letters contained no intimation of Waugh's alleged sale to defendant. In the first was enclosed $110.00, and in the second $20.00. There was an unsettled account between Waugh and plaintiff, outside of any transaction in relation to the property in controversy. The evidence is not clear as to the amount due from Waugh to plaintiff. In the first letter mentioned occurs this language: "You send me a receipt for this money and rite me at once and send me the bill for the balance I will

send you the same. Bill I want you to the very Best you can for I have to have a horse and it is cheaper to buy than to keep one all the time." Waugh says in reference to this letter that he was trying to "do" the plaintiff on his price for the property in controversy. However this may be, some of the statements made in that letter are inconsistent with the existence of a previous continuing offer or option as claimed by Waugh. In the second letter mentioned occurs this language: "Please find enclosed $20. I could have sent this some time ago but did never hear from you, and did not know where you got that money I sent you for the mare. I will send you twenty more in a short time * * * I can't tell you just now Bill when to rite me at. I will rite you again in a few days." This was the last of Waugh's correspondence. No inference can be drawn against the plaintiff from his failure to answer that letter, owing to the uncertainty of the place to which an answer should be directed. These letters are relied on by defendant to show an implied acceptance of a previous continuing offer or option. In our judgment they fall short of showing an unequivocal and unqualified acceptance of a previous offer or option, even if there had been such an offer or option. Especially is this true when these letters are considered with the contents of the letter hereinafter mentioned. The fact that the evidence fails to show such acceptance, express or implied, is a sufficient reason alone for setting aside the verdict. In addition to the two letters mentioned, there was a previous letter sent by Waugh to plaintiff about the 15th of July, 1902. This also was after Waugh's attempted sale. This letter was lost or misplaced by plaintiff, but in it Waugh asked plaintiff to give him a price on the mare, to put her down at the lowest price, for he wanted to buy her instead of hire her. This evidence of the plaintiff as to this letter is wholly uncontradicted and uncontroverted. Waugh does not deny that he sent the letter, but cannot say what was in it. The fact that this letter was sent stands undisputed. It is wholly inconsistent with the existence of the continuing offer or option claimed. It purports to begin a negotiation for the purchase of the mare, asking a price. Also, there are other uncontroverted evidence, facts and circumstances tending to sustain plaintiff's contention. The evidence with-

out contradiction shows that about the first of January, 1903, after this suit was instituted, and, according to intimations in the evidence, probably after a warrant or warrants had been issued for Waugh, he came back to Logan Court House and made an arrangement with plaintiff to buy the mare in controversy at the price of $125.00, in order that he might return her to the defendant, and notes were drawn up therefor, which Waugh was to sign and have endorsed. This latter arrangement was not consummated. In speaking of this transaction, Waugh admits that there was such an arrangement and says in substance that he did not intend to carry it out, but that he wanted "to see if he (meaning plaintiff) was going to push me." "The reason I did that was to find out exactly if Mr. Coalmer was trying to do me that way." It is unnecessary further to detail evidence, facts or circumstances. When all the evidence, facts and circumstances are considered, there is plainly a decided weight and preponderance of evidence against the existence of the offer or option claimed and against the verdict. We cannot say that the lower court plainly erred in setting the verdict aside and in awarding a new trial, but can say that such action was plainly right. What we have said in relation to the evidence applies to the evidence on the former trial, and not to any new or different evidence which may be adduced on another trial.

The judgment is affirmed.

*Affirmed.*