JOHN SANTY, *Adm'r.* v. COMMERCIAL CASUALTY INSURANCE COMPANY

(No. 7217)

Submitted May 24, 1932. Decided May 31, 1932.

*Sanders, Crockett, Fox & Sanders,* for plaintiff in error.
*Froe, Capehart & Miller,* for defendant in error.

HATCHER, PRESIDENT:

This action was brought by Pete Santy to recover sick benefits under an insurance policy issued by the defendant. Pending the suit, Santy died; his administrator revived the action and recovered judgment, and the defendant secured a writ of error.

The main issue is whether Santy was taken ill in September or in October of 1930, as he paid his premium for the former but not for the latter month, and under his policy no recovery can be had for sickness occurring when the premium was in default. Mrs. Nick Grasso, a daughter of Santy, testified as a witness for plaintiff that her father became ill on September 25, 1930, and was brought to her house on the following day; she found the insurance policy in his pocket and on September 27th she wrote defendant at Bluefield, care of D. B. Cruise, its district manager, notifying it of her father's illness; she received no reply to her letter, and after waiting ten days referred the matter to her attorneys; and she had Dr. J. T. Peters treat her father on September 29th. She is supported by several witnesses not related to the family, including Dr. Peters, as to the exact dates of her father's illness.

Mr. Cruise testified that he did not receive the alleged September letter from Mrs. Grasso and the first notice of Santy's illness received was on November 19, 1930; he immediately mailed Santy a blank for proof of illness, requesting names of all the doctors who had treated him, and the proof was returned on December 9, 1930; he received a letter from Jim Santy, a son of Pete Santy, written on December 13th in behalf of his father, which threatened suit; he then discovered the October premium had not been paid and the policy had lapsed, and on December 17th so notified the insured; and he received no further written communications from the Santy family or its attorneys prior to the suit (commenced in April, 1931). The notice (November 19th) and proof of sickness (December 9th) were introduced in evidence. The notice stated the insured took sick on October

9th. The proof, warranted by the insured to be correct, also fixed the inception of his illness as October 9th, and gave Dr. Straub, Dr. Vermillion and Dr. Camper as the physicians who had treated him. (It will be noted that this instrument did not mention Dr. Peters.) The Jim Santy letter was not permitted to go to the jury, but is in the record, and it also stated that the insured "was taken sick on October 9, 1930."

Dr. Straub testified (after refreshing his memory from his records) that he examined the insured on October 10, 1930, in the presence of his wife and daughter (Mrs. Grasso) who said he was taken sick on October 9th, and made no mention of a previous illness. Dr. Camper testified that he examined the insured on October 20, 1930, (taking a history of the case), and insured then stated he had been feeling badly for about two weeks.

John Santy, another son of the insured, said he wrote and signed his father's name to the notice of November 19, 1930, getting the information as to date of sickness from Dr. Straub. He later said, however, he gave that information to Dr. Straub in the presence of Mrs. Grasso. Mrs. Grasso said she did not furnish Dr. Straub "much information at all" about her father, and the doctor got such information "from his own self". Jim Santy testified that he wrote the letter of December 13, 1930, after talking to his sister, Mrs. Grasso, but the letter contains nothing which she told him; and that he did not know when his father became ill—he just "guessed" at the facts stated in the letter. No witness claimed that the insured himself did not sign the proof of disability returned on December 9, 1930.

Ordinarily the verdict of a jury on conflicting evidence will not be disturbed. Here, however, the insured and the several members of his family made repeated statements either in writing (the notice of November 19th, the proof of December 9th, and the letter of December 13th) or of which written memoranda were made simultaneously (the records of Drs. Straub and Camper) that the illness of the insured commenced in October. No satisfactory reason appears why the witnesses who corroborated Mrs. Grasso concerning the

September illness should have remembered at the trial a year later so precisely the exact dates of occurrences in which they had no special interest. The testimony of the several members of the Santy family attempting to discredit the documentary evidence is not credible. Therefore the documentary evidence must prevail. *Kelley* v. *Ins. Co.,* 75 W. Va. 637, 644-5, 84 S. E. 502; *Devericks* v. *Imp. Co.,* 73 W. Va. 174, 80 S. E. 143; 20 R. C. L., subject New Trial, sec. 61; 46 C. J., subject New Trial, secs. 136 and 139.

The judgment of the circuit court is accordingly reversed, the verdict set aside, and a new trial awarded the defendant.

*Reversed; verdict set aside; new trial awarded.*